# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> KWASI GYAMBIBI and KAKRA GYAMBIBI, <br> *Defendants*. | No. 3:18-cr-00136 (JAM) |

## ORDER RE RESTITUTION

This case arises from criminal charges of healthcare fraud against defendants Kwasi Gyambibi and his spouse, Dr. Kakra Gyambibi. The superseding indictment charged both defendants with eighteen counts of healthcare fraud in violation of 18 U.S.C. § 1347 (Counts One to Eighteen) and one count of conspiracy to commit healthcare fraud in violation of 18 U.S.C. § 1349 (Count Nineteen). I presume familiarity with the facts of this case as described in a prior ruling. Doc. #145; *United States v. Gyambibi*, 2019 WL 5208648 (D. Conn. 2019).

On January 18, 2019, Kakra Gyambibi pleaded guilty to Count Nineteen of the superseding indictment charging her with healthcare fraud conspiracy. The plea agreement set forth the Government's position that the amount of restitution to be paid would be more than $1.6 million, and Kakra Gyambibi reserved her right to argue for a lesser amount on the ground that the entire loss amount was not reasonably foreseeable to her. Docs. #63 at 2, #128-3 at 1. On June 12, 2019, the Court sentenced Kakra Gyambibi principally to a term of 3 months' imprisonment with a restitution order to follow. Doc. #139.

In the meantime, Kwasi Gyambibi exercised his right to jury trial. The jury returned a mixed verdict: guilty on two counts (Counts 4 and 5), not guilty on seven counts (Counts 10 to 16), and no verdict at all on the remaining counts (Counts 1 to 3, 6 to 9, and 17 to 19). On

1

February 19, 2020, the Court sentenced Kwasi Gyambibi principally to a term of one year imprisonment with a restitution order to follow.

Following the sentencing hearing for Kwasi Gyambibi, the Court scheduled a joint hearing for both defendants with respect to the issues of restitution and based on the Court's queries for supplemental briefing. Docs. #156, #157. The Government requests a restitution order with joint and several liability against both defendants in the full amount of the losses to the health plans and insurance companies in the amount of $1,650,332.35. Both defendants object to the Government's request.

The payment of restitution in this case is subject to the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A. It provides in relevant part that "the court shall order . . . that the defendant make restitution to the victim of the offense" and that "the term 'victim' means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." *Id*. at § 3663A(a)(2).

### *Kakra Gyambibi*

Kakra Gyambibi does not dispute the Government's calculation of the losses sustained by the victims but she argues that the entire loss amount was not reasonably foreseeable to her. At Kakra Gyambibi's sentencing, however, I ruled that the entire loss was reasonably foreseeable to her for Sentencing Guidelines loss calculation purposes. "Where the crime of conviction is a conspiracy, a district court may order the defendant to pay restitution for the reasonably

foreseeable losses caused by the conspiracy." *United States v. Odiase*, 788 F. App'x 760, 764 (2d Cir. 2019) (citing *United States v. Boyd*, 222 F.3d 47, 51 (2d Cir. 2000)).

I see no grounds to reach a different conclusion as to reasonable foreseeability for restitution purposes than I did for Sentencing Guidelines purposes. It is true that the evidence does not show that Kakra Gyambibi had actual knowledge of all the transactions and particular product prices that resulted in the enormous losses. But she is a medical healthcare professional with knowledge that healthcare products may prove very expensive, and there is nothing to show that she could not have learned from Kwasi Gyambibi or by query to her own health plan (because some of the products were ordered in her own name) how much the products cost.

Kakra Gyambibi also knew Kwasi had a financial motive to promote sales with resulting commission payments to Leroy Prempeh. Although it is true that Kwasi Gyambibi sometimes used a photocopy of Kakra Gyambibi's signature to replicate orders that she may not have known about, Kakra Gyambibi chose to sign a blank prescription form for Kwasi Gyambibi to use, and this means that these additional uses of her name were reasonably foreseeable to her. Accordingly, I conclude that the entire amount of losses to the victims was reasonably foreseeable to Kakra Gyambibi.

### *Kwasi Gyambibi*

As to Kwasi Gyambibi, there is also no doubt about the calculation of the entire loss and that this entire loss was reasonably foreseeable to him. Even though the evidence did not show that he personally received money from the scheme, he was well aware how much Advantage Pharmacy was receiving in payments and of the commission structure. Doc. #135 at 5. The different issue presented for Kwasi Gyambibi's restitution calculation arises from the fact that he was convicted on only two of the nineteen counts charged against him. The two counts of

conviction involved prescriptions issued in the name of Betty Exume, while the jury acquitted or hung on all the other substantive counts involving prescriptions issued in the name of Kakra Gyambibi as well as on the conspiracy count.

"The MVRA's definition of 'victim' reflects an important limiting principle for restitution awards—namely, that Congress has 'authorize[d] an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction.'" *United States v. Vilar*, 729 F.3d 62, 97 (2d Cir. 2013) (quoting *Hughey v. United States*, 495 U.S. 411, 413 (1990)). Still, as noted above, the MVRA makes clear that "in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, [a 'victim' includes] any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663A(a)(2).

What I understand this to mean is that restitution must be limited to losses that are caused by "the specific conduct that is the basis of the offense of conviction" but that—in cases involving a charged conspiracy or scheme to defraud—the "offense of conviction" is defined by reference to the *entire* conspiracy or scheme to defraud that is the basis for conviction. So, for example, suppose a defendant engages in a scheme to defraud in which he passes 100 counterfeit checks. If the Government charges a scheme to defraud that involves 5 of those checks and proves the charge at trial, a court may order restitution for the uncharged 95 counterfeit checks if these checks were all part of the same scheme to defraud. That is because "[t]he district court ha[s] the authority to order restitution for the losses caused by the entire fraud scheme, not merely for the losses caused by the specific acts of fraud proved by the government at trial." *United States v. Brothers*, 955 F.2d 493, 497 (7th Cir. 1992).

Here, the superseding indictment charges a scheme to defraud that involved common means (the submission of claims for prescription drugs without a valid prescription) but the use of different actors (sometimes the submission of prescriptions signed by Betty Exume and sometimes the submission of prescriptions signed by Kakra Gyambibi):

> The object of the scheme was for KWASI GYAMBIBI and KAKRA GYAMBIBI to enrich themselves and others by obtaining money from the Victim Programs to which they were not entitled. To do this, KWASI GYAMBIBI and KAKRA GYAMBIBI submitted and caused to be submitted to the Victim Programs materially false claims for compound prescription drugs based on prescriptions purportedly signed and issued by B.E. [Betty Exume], and based on prescriptions purportedly signed and issued by KAKRA GYAMBIBI when, as KWASI GYAMBIBI and KAKRA GYAMBIBI well knew, B.E. [Betty Exume] and KAKRA GYAMBIBI had not treated or examined the patients, and had not determined that the prescription drugs were medically necessary, and the prescriptions were not made or issued in accordance with the generally accepted standards of medical practice, and, in certain instances, KAKRA GYAMBIBI or B.E. [Betty Exume] had not even signed the particular prescription, as a photocopy of their signature was used to create the prescription.

Doc. #58 at 5 (¶ 19).

The jury was furnished a copy of the superseding indictment and instructed at trial that, in order to return a verdict of guilty for any of the substantive counts (Counts One to Eighteen), "the prosecution must prove that there was as described in the Superseding Indictment a scheme to defraud a health care benefit program in connection with the payment for prescription drugs." Doc. #115 at 9. Because the jury returned verdicts of guilty on Counts Four and Five, the jury necessarily found that there was a scheme to defraud as described in the indictment.

Despite the fact that the two counts of conviction involved prescriptions written by Betty Exume and that the jury did not return guilty verdicts for any of the counts involving prescriptions written by Kakra Gyambibi or the conspiracy count involving Kakra Gyambibi, the

5

jury nonetheless found that the Government proved the charged scheme to defraud. Just as the restitution statute "confers authority to order a participant in a conspiracy to pay restitution even on uncharged or acquitted counts," *United States v. Boyd*, 222 F.3d 47, 51 (2d Cir. 2000), it likewise allows for restitution if the jury has returned a verdict of guilty finding a scheme to defraud despite any additional counts of acquittal. *See United States v. Jafari*, 104 F. Supp. 3d 317, 324-26 (W.D.N.Y. 2015), *aff'd*, 663 F. App'x 18 (2d Cir. 2016). Accordingly, I conclude that restitution may be ordered against Kwasi Gyambibi for the full amount of losses within the scope of the charged scheme to defraud.

### *Apportionment*

As noted above, both Kakra Gyambibi and Kwasi Gyambibi may properly be held liable for the full amount of restitution. But there is one more consideration: apportionment. "If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." 18 U.S.C. § 3664(h).

In my view, it is appropriate to apportion the total liability in light of the financial circumstances of the defendants so that each of them is individually liable for half the total restitution amount. It is unclear whether the defendants will remain a single household. Although Kwasi Gyambibi bears a greater burden of culpability for the entire scheme, Kakra Gyambibi likely has a better future earning potential. Both are of limited means—especially as a result of these proceedings—and therefore I conclude that, rather than imposing joint and several liability on them for the entire restitution amount, each defendant should be individually liable for half the amount of total restitution and without interest.

## CONCLUSION

For the reasons set forth above, the Court concludes that defendant Kakra Gyambibi shall be liable to pay restitution in the total amount of $825,166.17 and that defendant Kwasi Gyambibi shall be liable to pay restitution in the total amount of $825,166.17. The Government is requested to prepare restitution orders for the Court's final approval.

Dated at New Haven this 24th day of February 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge